IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| PROGRESSIVE GULF INSURANCE COMPANY, ) ) ) | |
| Plaintiff, ) | Civil Action No. 5:21-cv-00056 |
| ) v. ) ) | **MEMORANDUM OPINION** |
| MATTHEW REYNOLDS, *et al.*, ) ) | By:  Hon. Thomas T. Cullen United States District Judge |
| Defendants. ) | |

In February 2020, Jonathan Allen Wilson grabbed the wheel of the Buick LeSabre that Matthew Reynolds was driving and crashed the car into the side of a Coca-Cola bottling plant. Virginia police investigated the accident and cited Wilson for reckless driving. Wilson was later convicted of improper driving.

CCBCC Operations, LLC ("CCBCC"), which owns the bottling plant has sued Wilson and Reynolds for the property damage in the Circuit Court for the County of Augusta. Reynolds's insurer, Plaintiff Progressive Gulf Insurance Company ("Progressive"), brings this suit seeking a declaratory judgment that its policy excludes Wilson from coverage. Progressive has moved for summary judgment, and the court will grant that motion.

### I.  BACKGROUND

In February 2020, Reynolds was driving his friend Wilson through Fishersville, Virginia. (Dep. of Matthew Reynolds 6:3–18, Jan. 28, 2022 [ECF No. 24-2].) Reynolds had picked Wilson up on their way to visit Reynolds's brother. (*Id.* at 6:19–23.) The two carpooled, in part, because Wilson did not have—and has never had—a driver's license. (Dep. of

Jonathan Wilson 14:1–5, Jan. 28, 2022 [ECF No. 24-1].). Wilson rode in the front passenger seat. (*Id.* at 11:24–25:1.)

The parties dispute some of what happened on that drive. Wilson testified that Reynolds intentionally swerved between lanes and that the two of them were "goofing around in the car just like teenagers." (Trial Tr., *Commonwealth v. Wilson*, Case No. GT20003322-00, at 4:3–5:12, Aug. 6, 2020 [ECF No. 22-3].) Reynolds was not asked about this during his deposition; all he said was that he and Wilson discussed go-carting before the accident. (Reynolds Dep. at 8:4–7.) On the other hand, Reynolds testified that Wilson, unprovoked and unencouraged, had grabbed the steering wheel about two minutes before the crash. (*Id.* at 7:24–8:21, 9:20–10:18.) Reynolds admonished Wilson, who released the steering wheel. (*Id.* at 10:22–11:9.) Wilson denies that this happened. (Wilson Dep. at 10:12–16, 10:23–11:4, 20:24–21:11.) But the parties agree that Reynolds never gave Wilson explicit permission to touch the steering wheel. (Reynolds Dep. at 14:7–16; Wilson Dep. at 12:25–13:16.)

In any event, there is no dispute about the cause of the crash itself. Wilson reached his right hand across his body to grab and jerk the wheel. (Wilson Dep. at 11:10–12:10.) The LeSabre left the road, struck a pole, jumped a curb, and hit a parked car. (*See* Reynolds Dep. at 8:12–17; *cf.* Wilson Dep. at 8:12–9:11, 10:12–16 (not mentioning a parked car and describing the pole as a cinder block).) Attempting to control the vehicle, Reynolds stretched for the brake. (Reynolds Dep. at 8:14–17.) But his foot found the accelerator instead, sending the car into CCBCC's building. (*Id.* at 8:14–17; 13:2–12) Reynolds testified that Wilson apologized to him as they were crashing. (*Id.* at 8:18–21.) Wilson does not remember doing so. (Wilson Dep. at 17:22–18:12.)

After a police investigation into the crash, Virginia authorities cited Wilson for reckless driving. (*See* Trial Tr. at 2:12–14.) Wilson was later convicted for the lesser offense of improper driving. (*Id.* at 8:4–7.) Reynolds received a warning. (Reynolds Dep. at 30:21–31:7.) CCBCC has filed a lawsuit against the two men for the damage to its building. (*See* ECF No. 1-2.)

Reynolds owns a drivers insurance policy on his LeSabre through Progressive (Policy Number: 935449202) ("the Policy"). (Policy at 2 [ECF No. 1-3].) The Policy provides Reynolds with coverage for "'property damage' for which any 'insured' becomes legally responsible because of an auto accident." (*Id.* at 10.) It defines "insured" as "[a]ny person using or responsible for the use of 'your covered auto.'" (*Id.*) By statute, this coverage reaches those using the car "with the expressed or implied consent of [Reynolds]." *See* Va. Code Ann. § 38.2-2204(D); *Palmer v. Nationwide Prop. & Cas. Ins. Co.*, No. 2:19CV403, 2021 WL 4157734, *5–6 (E.D. Va. Sept. 13, 2021), *appeal filed*. The operative exclusion, however, denies coverage to anyone "[u]sing a vehicle without a reasonable belief that [he] is entitled to do so." (Policy, at 11.)

On August 20, 2021, Progressive filed a complaint in this court seeking a declaratory judgment against Reynolds, Wilson, and CCBCC (collectively, "Defendants"). (Compl. [ECF No. 1].) Progressive asks the court to preemptively resolve whether "Wilson is entitled to insurance coverage under the Policy with respect to the Accident and Underlying Lawsuit" by entering a declaratory judgment confirming that Wilson is excluded from such coverage. (*Id.* ¶ 20–23.)

CCBCC filed an answer on October 20, 2021. (ECF No. 9.) Both Reynolds and Wilson were served with copies of the complaint in September 2021, but neither has appeared in this

action. (*See* ECF Nos. 11, 12.) The clerk entered entries of default against Reynolds and Wilson in February 2022. (ECF No. 19.) Progressive moved for summary judgment on March 11, 2022. (ECF No. 22.)

## II. STANDARD OF REVIEW

Under Rule 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. *Celotex*, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets that burden, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Glynn*, 710 F.3d at 213 (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is

to be believed, and all justifiable inferences are to be drawn in his favor.'" *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. The nonmoving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" *Glynn*, 710 F.3d at 213 (quoting *Anderson*, 477 U.S. at 252). The nonmoving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990) (citing *Anderson*, 477 U.S. at 248). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. *World-Wide Rights Ltd. P'ship v. Combe, Inc.*, 955 F.2d 242, 244 (4th Cir. 1992).

### III.  ANALYSIS

This case boils down to whether CCBCC has established a genuine issue of material fact that Wilson reasonably believed that he had Reynolds's permission to grab the wheel. The parties agree that a reasonable belief, in this circumstance, requires permission from the vehicle owner. (*See* Pl.'s Br. Supp. Mot. Summ. J. at 9–10 [ECF No. 23]; Def.'s Br. Opp'n Mot. Summ. J. at 4–6 [ECF No. 24].) And the parties agree that reasonable belief is an objective standard. (Pl.'s Br. Supp. Mot. Summ. J. at 9; *see* Def.'s Br. Opp'n Mot. Summ. J. at 2–6 (implicitly adopting this framing in its analysis).)

But no accounting of the facts creates a genuine issue of material fact with respect to whether Wilson (who has never possessed a driver's license) reasonably believed that he had Reynolds's permission to grab and yank the steering wheel from the front passenger seat. CCBCC points to Wilson's deposition testimony that, at some point prior to his grabbing the steering wheel and causing the accident, Reynolds had been swerving between lanes, to suggest that by "goofing" off, Reynolds implicitly gave Wilson permission to do the same. Although Reynolds denies that this happened, the court must accept Wilson's testimony as true for purposes of summary judgment.

But Reynolds's prior swerving, by itself, could not have given Wilson a reasonable belief that he could grab the steering wheel for two reasons. First, Wilson had never had a driver's license. (Wilson Dep. at 14:1–5.) Second, it is well-established that a passenger's grabbing the steering wheel without the driver's permission to do so exceeds the scope of coverage for permissive use of another's vehicle. *See, e.g, Schmucker v. Kurzenberger*, No. 12CA0013, 2013 WL 1799885, at *3–5 (Ohio Ct. App. Apr. 29, 2013) (passenger's "grabbing the steering wheel and jerking it to the right" "was outside the scope of the permission granted to her to use the Jeep as a passenger"); *Progressive Halcyon Ins. Co. v. Giacometti*, 72 A.D.3d 1503, 1505–06 (N.Y. App. Div. 2010) ("We agree with Progressive that it met its burden of establishing that Giacometti had neither the express nor the implied permission of Doyle to use the vehicle. The evidence in the record, including the deposition testimony of Giacometti, establishes that she did not have express permission to take control of the steering wheel, and we further conclude on the record before us that Doyle did not impliedly consent to Giacometti's use of the vehicle in that manner[.]"); *Progressive Ins. Co. v. Glenn*, 50 Pa. D. &

C.4th 271, 287–90 (Pa. Ct. Cmn. Pleas 2000) ("[T]o suggest permission is given to grab a steering wheel in a vehicle operated by another simply by allowing one to become a passenger, is unreasonable and illogical. There is not a scintilla of evidence, nor the hint of any inference suggesting that when [the passenger] was given permission to ride as a passenger in this vehicle, that either [the driver] or [the policyholder] gave, directly or indirectly, permission, or could have reasonably anticipated that a passenger would grab the steering wheel where there was no emergency."); *Allstate Ins. Co. v. Gill*, 192 A.D.2d 1123, 1123–24 (N.Y. App. Div. 1993) ("[The passenger] was not operating the vehicle with permission when he, the front seat passenger . . . grabbed the steering wheel and wrested control of the vehicle away from the driver."); *Viking Ins. Co. v. Zinkgraf*, 737 P.2d 268, 268–69 (Wash. Ct. App. 1987) ("Although he had permission to be a passenger in her car, both [the passenger] and [the driver] stated in their depositions [the passenger] did not have permission to grab the steering wheel. It has been consistently held the grabbing of a steering wheel exceeds the scope of permission to ride as a passenger.); *State Farm Mut. Auto. Ins. Co. v. Larsen*, 377 N.E.2d 1218, 1221–22 (Ill. Ct. App. 1978) (reversing denial of summary judgment to insurer in case where a passenger had grabbed the steering wheel); *U.S. Fid. & Guar. Co. v. Hokanson*, 584 P.2d 1264, 1269 (Kan. Ct. App. 1978) ("It is unreasonable to assume that a passenger will grab a steering wheel and, without warning to the driver, give it a yank[.]"). Although no Virginia court has ever addressed this issue, the court finds these cases persuasive given the similarities between the policy exclusions at issue and the common understanding of permissive use.

Although the court can imagine a scenario whereby a front-seat passenger might have a reasonable belief that he has permission to grab the driver's steering wheel when the car is

moving—for instance, when the driver becomes medically incapacitated—there is no evidence of exigent circumstances justifying such drastic intervention in this case. It is undisputed that Reynolds never gave Wilson his permission to grab the steering wheel, and Wilson did not otherwise have a reasonable belief that he could do so. (*See* Reynolds Dep. at 14:7–15; Wilson Dep. at 12:25–13:15.)

While not directly on point, a recent decision from the Eastern District of Virginia buttresses this conclusion. The relevant policy in *Palmer v. Nationwide Prop. & Cas. Ins. Co.* excluded from coverage "any insured . . . [u]sing a vehicle without a reasonable belief that that insured is entitled to do so." 2021 WL 4157734, at *2 (alterations original). The driver lacked legal authority because he had a learner's permit instead of a license, and one condition of using his learner's permit was that he have a family member older than 21 in the front passenger seat. *Id.* at *4–5 & n.3. He testified that he knew about this rule and drove with a 19-year-old friend as his front-seat passenger anyway. *Id.* As to permission, his front-seat passenger only let him drive after he told her that he was 19 and had a valid driver's license. *Id.* at *2, 5. But a driver does not have effective permission to drive if he lied to obtain that permission. *Id.* at *5 (collecting cases). After concluding the driver did not have a reasonable belief in either his legal authority or permission to drive, the court held that the exclusion applied. *Id.* at *4–5. Like Wilson, then, the driver in *Palmer* lacked both legal authority and permission to drive. Therefore, Progressive's exclusion denying coverage to drivers lacking a reasonable belief in his entitlement to use the covered vehicle applies to Wilson.

In sum, there is no genuine issue of material fact that Wilson reasonably believed that he had Reynolds's permission to grab and yank the wheel while Reynolds was driving. Even

crediting Wilson's own testimony and drawing all reasonable inferences in his favor, Wilson could not have reasonably believed that.

## IV. CONCLUSION

For the above reasons, the court will grant Progressive's motion for summary judgment (ECF No. 22) and award Progressive a declaratory judgment.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all parties and counsel of record.

**ENTERED** this 8th day of April, 2022.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE